**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 5:25cr20 |
| | ) | |
| v. | ) | Tallahassee, Florida |
| | ) | June 11, 2026 |
| JACQUELINE DIANNE WALLACE, | ) | |
| | ) | 11:08 AM |
| Defendant. | ) | |
| | ) | |

**TRANSCRIPT OF SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE MARK E. WALKER**
**UNITED STATES DISTRICT JUDGE**
**(Pages 1 through 18)**

APPEARANCES:

For the Government: United States Attorney's Office
By: ERIC WELCH
Assistant U.S. Attorney
eric.welch@usdoj.gov
111 North Adams Street
Tallahassee, Florida 32301

For the Defendant: Richard Smith PA
By: RICHARD HIGDON SMITH
Attorney at Law
richard@richardsmithpa.com
911 East Park Avenue
Tallahassee, Florida 32301

Court Reporter: MEGAN A. HAGUE, RPR, FCRR, CSR
111 North Adams Street
Tallahassee, Florida 32301
megan.a.hague@gmail.com

*Proceedings reported by stenotype reporter.*
*Transcript produced by Computer-Aided Transcription.*

**P R O C E E D I N G S**

(Call to Order of the Court at 11:08 AM on the 11th day of June, 2026.)

THE COURT: All right. Please take your seats.

We are here in Case Number 5:25cr20, United States versus Wallace. We are here for sentencing.

I have counsel for the government present; counsel for the defendant present, and the defendant is present.

Is the government ready to proceed?

MR. WELCH: Yes, Your Honor.

THE COURT: Defense ready to proceed?

MR. SMITH: Yes, Judge.

THE COURT: Ms. Wallace, if you'll keep your seat but raise your right hand.

(Defendant was duly sworn by the Court.)

THE COURT: You can put your hand down, ma'am.

At the time of your plea, I told you that a presentence investigation report would be prepared.

Have you gone over that report?

THE DEFENDANT: Yes, sir.

THE COURT: Have you reviewed it with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Smith answered any and all questions you have regarding the report?

THE DEFENDANT: Yes, sir.

THE COURT: I also told you that both sides could file objections. Neither -- well, the government suggested something that didn't affect the guideline range, one of the facts, and your lawyer didn't have any objections.

Were you aware that no substantive objections were filed?

THE DEFENDANT: Yes, sir.

THE COURT: And did you go over that with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: In response, the last page of the report, page 16, paragraphs 97 through 100, is labeled an addendum, and it simply indicates that the two letters were received and that there were verification letters regarding employment and so forth in paragraph 100.

When you reviewed the report, did you also review that last page?

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: Do you have any questions for either your lawyer or myself regarding anything in the presentence investigation report, the objection letters, or the addendum?

THE DEFENDANT: No, sir.

THE COURT: All right. I also need to advise you that you have the right of allocution. That's just a fancy way of saying you have the right to speak to me today directly as part of your lawyer's presentation.

Do you understand you have that right?

THE DEFENDANT: Yes, sir.

THE COURT: The Rules of Criminal Procedure, and rightly so, require me to verify you've reviewed the report, any objections, and the addendum. We've done that.

The Rules of Criminal Procedure, and, again, rightly so, require me to verify that you understand you have the right of allocution, and we've done that.

The next thing I have to do is calculate the guideline range.

Does the government agree the total offense level is 2; the criminal history category is I, and the guideline range is zero to six months?

MR. WELCH: Yes, Your Honor.

THE COURT: Does the defense likewise agree?

MR. SMITH: Agreed.

THE COURT: Based on this Court's independent review of the presentence investigation report, guidelines, case law and commentary construing same, I find the total offense level is 2; the criminal history category is I, and the guideline range is zero to six months.

I'm not aware of anything that's been filed that I should have reviewed in addition to the materials contained in the presentence investigation report.

Anything additional that's been filed from the

government?

MR. WELCH: No, Your Honor.

THE COURT: From the defense?

MR. SMITH: No, Judge.

THE COURT: All right. Ms. Wallace, I'm not suggesting anything else should have been filed, but I want to make sure, first, that you know everything that I've reviewed, because you and your lawyer should be able to respond, which is why I pointed out I had the report, the objections, and the addendum.

THE DEFENDANT: Yes, sir.

THE COURT: But, also, if your lawyer or somebody else filed something, then it would be important for me to review it. So I was just verifying that nothing additional had been filed.

THE DEFENDANT: Yes, sir.

THE COURT: The next phase of sentencing, I'm going to hear from your lawyer about the appropriate sentence. As part of his presentation, you certainly can address the Court. As I've said, that's your right.

Once I've heard from the defense, I'll hear from the government. I'll then give your lawyer the last word since you are being sentenced today.

Mr. Smith, you have the floor.

MR. SMITH: Thank you, Judge.

You want me here or the podium?

THE COURT: You are fine there.

MR. SMITH: Okay. Judge, Ms. Wallace, as this Court knows, is charged with a misdemeanor. This, I believe, is the first PSR that I've worked off of in district court in front of Your Honor or any other judge. To me it points towards what this case started off as and what it ended up as.

Through some work with the U.S. Attorney's Office and to the credit of Mr. Welch and his other lawyers at the U.S. Attorney's Office, we kind of got to the bottom of what occurred in this case.

THE COURT: This is the case where you've got somebody at an event that signs Ms. Wallace up; correct?

MR. SMITH: Yes, sir.

THE COURT: So this is not a case of where somebody as part of a larger group is trying to affirmatively go out; somebody sought her out at an event, had her fill out the material, and registered her; correct?

MR. SMITH: That's correct, Judge.

THE COURT: And I'm not saying that's okay, I want to make plain --

MR. SMITH: No, I'm not either.

THE COURT: I want to say it's entirely different than somebody who either individually or as part of a larger conspiracy is affirmatively, without somebody approaching them, telling them it's okay and registering them. That they are

affirmatively trying to do something they don't -- know they don't have the right to do and so forth.

MR. SMITH: That's right, Judge.

And to that end, ironically, and almost movie worthy, she was registered as a Republican in Bay County. Okay. My client was registered as a Republican in Bay County, and she cast a vote in the presidential primary in August of 2024, from a list of Republican candidates, all who were -- very hard on immigration were their stances.

It made absolutely no sense for Ms. Wallace to do what she did instead of being misguided. But we recognize that there's a law that says, We don't care whether you were misguided or not. If you do this, you are going to pay the consequences, and that's where we are today.

Regardless of the erroneous information that she received or any other external factors that went into this occurring, she's faced with the consequence of submitting that ballot. So that's where we are.

And, too, with the guidelines being level 2, I'd like to point out to the Court what you have already seen in the presentence report. She has worked at the same job since 2011 at Edgewater Beach Resort, for 14 years. She's paid her taxes. She's paid her rent. She's done everything that somebody that comes to the United States is supposed to do.

She's gone as far as to register a corporation that is

still active with the Division of Corporations here in Florida.

THE COURT: How does the -- and it's not up to the Court, but how does the misdemeanor impact her immigration status?

MR. SMITH: We don't know.

Okay. She has a pending VOWA petition, which is Violence Against Women's Act, which she had pursued prior to this ever occurring. This isn't something she came up with afterwards. It was pending when this arrest occurred, which is --

THE COURT: You answered my question. The answer is, Judge -- because I was asking in terms of collateral consequences -- Judge, we just don't really know how it will shake out.

MR. SMITH: Right. Really, her coming out of this as clean as possible gives me some hope for what might occur to her later.

But I want the record to be as clear as possible that yes, she was not a member of somebody that was trying to sway the presidential election. She's not a member. She did nothing nefarious to attempt to get any other benefit out of this.

Obviously, there's been no benefit to Ms. Wallace. It's been nothing but detrimental to her, what occurred. There was no perceived benefit other than she might get some preferential financial aid, but that really wasn't true because

as long as you establish state citizenship -- she's a Florida citizen -- her financial aid would have been taken care of.

That was -- I can't say this for sure, but it sure seems like somebody at the junior college thought it would be a good idea to register as many people as they could that came through and it would be just another layer that they could say that they had taken care of to assure that they would get financial aid.

But Ms. Wallace has been one of those immigrants that has tried for the American dream: Pay taxes, live in the same place, work in the same place, tried to start a business. She's done everything.

She's been very cooperative with me and very communicative to me because she's very concerned about this. And the overarching concern is the one that the Court brought up, how is this going to affect her immigration status, and nobody knows.

THE COURT: Thank you.

MR. SMITH: Thank you, Judge.

THE COURT: Does Ms. Wallace wish to address the Court?

THE DEFENDANT: Yes, sir.

I never came here to violate the law. And if I could take back that day, I would.

I just went here to sign up for FAFSA. She ask me the

question. I never think anything of it, and I just said, Okay. I never -- never did. I never did.

And regardless of what happens at the end of this, the part that hurts me is that I'm seen as someone who is hard, but someone who leaves her country, come here to break the law, and that's not true. I am ashamed every day.

I'm afraid to live, afraid to go out because I'm fearful that I might say the wrong thing, I might say the wrong -- my judgment is just off because I made a big mistake.

And as far as the immigration side, I don't really want to go back, but it's not in my control. And if I do go back, I know it's -- I would have to pick up the pieces. It's going to be very hard, because right now at the time I face backlash on social media because of what happened. And I know once I get there it's going to be worse, but it's something that I will have to live with.

THE COURT: Thank you.

THE DEFENDANT: Thank you.

THE COURT: Mr. Welch.

MR. WELCH: Yes, Your Honor.

Just to provide additional context, at least it's the government's understanding from having spoken with the individual who likely assisted Ms. Wallace in submitting her registration that, essentially, she was at a student services office on campus, was trying to establish residency, and it was

in the course of that that the application was submitted. I think there is probably some question about exactly what happened during that conversation and exactly what was said or not said to Ms. Wallace. But that's our understanding of the context in which the application was submitted.

From the government's perspective, this is a serious case. Anytime that someone votes who is not authorized to do so, it is concerning because regardless of how frequently that may or may not occur, it fuels concerns about security of elections. And so from the government's perspective, this is serious.

Having said that, I recognize what the guidelines are. I recognize that this is Ms. Wallace's first conviction. In light of that, if the Court is not considering a sentence of any kind of incarceration, we would ask the Court to consider a sentence of supervised release for the longest time possible to ensure that, regardless of what happens with Ms. Wallace's immigration status, that for at least while she's on supervised release the Court is ensuring she's following the law.

(Discussion between defendant and defense attorney.)

THE COURT: Anything further, Mr. Smith?

MR. SMITH: Judge, I think the most appropriate sentence is a noncustodial sentence with a period of supervision.

I would like to point out that Ms. Wallace is on an

ankle monitor now, and she has been on an ankle monitor the whole time. I don't know that it was every necessary in the first place. She could never --

THE COURT: When I sentence her today, unless I put her back on, it comes off; right?

THE PROBATION OFFICER: That's correct.

THE COURT: It's coming off.

MR. SMITH: Coming off, yes. Thank you.

That's all.

THE COURT: This is a violation of the law, and it's appropriate to impose a sentence when the law has been violated, but we need to keep things in perspective about what Ms. Wallace did versus what the allegations are generally in these types of cases, which are folks that are intentionally going out and voting, to try to vote knowing that they can't vote, which is certainly distinguishable from going to a community college and having the community college sign you up.

One has to wonder why the person who signed Ms. Wallace up is not sitting in my courtroom. I'll leave that at that, although I have some guesses as to that person's race and party affiliation.

It also -- and this is not directed to Mr. Welch, but it's rich to me to talk about undermining our faith in our election system when you turn on the news and everybody from the leader of the free world all the way down, including the Speaker

of the House, is suggesting that the elections in California are rigged. And we've heard it 24/7 for the last week because they are counting millions of votes and it must be rigged because in a city like LA where three-quarters of the registered voters are Democrats, they didn't elect a Republican to be mayor of LA. What a shocker that is.

But Ms. Wallace is here in front of me and she's the one being sentenced and she's committed a crime. I think by Ms. Wallace's presentation, which is as sincere as anybody that's ever spoken to me in this court, I absolutely believe her that she had no intent to break the law, that she is -- unlike the crocodile tears that I normally see in the courtroom, I find that Ms. Wallace was absolutely truly ashamed that she's here and horrified that she's in court. I think she has suffered based on the charges and being adjudicated guilty of the misdemeanor, and this government has extracted it's pound of flesh from her.

I'm certainly not going to impose any additional time in custody. The guideline range is six to -- is zero to six months, so it's -- I'm going to give her credit for time served, which is a guideline sentence.

I'm going to put her on one year of supervised release, which is a -- within the guideline range.

I'm not going to impose a fine because I do not find she has the ability to pay a fine.

I'm going to impose the $25 monetary assessment.

I find she's low risk for any use of illicit drugs; therefore, I am not imposing any drug testing.

I'm not going to impose any special conditions of supervision. I'm only imposing the mandatory conditions of supervision.

Again, I want to make plain and circle back, I am not quibbling with Mr. Welch or his office by charging Ms. Wallace. She violated the law.

THE DEFENDANT: Yes.

THE COURT: I also want to make plain I'm not suggesting it's okay to vote if you are an alien. The question becomes based on the facts of this case, based on what Ms. Wallace did and the unique circumstances of why she voted under those facts, I find a credit for time-served sentence and one year of supervised release is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

As far as general deterrence, which is important, if this were somebody that was out as part of a scheme, Mr. Welch would be absolutely right that we would need to dissuade folks from doing this. I don't know how I dissuade law-abiding, hard-working resident aliens who go to try to better themselves at a school and are talked into registering to vote. That's what this case is about, and so I find there would be no general deterrent effect based on the limited universe and the special

circumstances of this case. And there is absolutely no need for specific deterrence, that is, because Ms. Wallace has a clean record, has been here for years.

And I have no doubt that if she had not walked into that office that day and had not met with the person she met with, she would not be sitting here today. And I don't have any reason to believe she would violate the law.

I'm giving the one year of supervised release because it is the guideline term of supervision. In terms of tailoring supervision -- and I find -- to ensure that I'm right that Ms. Wallace is law abiding and this was an aberration born of unique circumstances as outlined by Mr. Smith, I find that one year of supervision is sufficient to ensure that I got it right and that Mr. Smith's representations to the Court were correct. And I find no further supervision is needed and have tailored the period of supervision to the unique facts of this case.

Having announced what I'm going to do, I will formally announce the sentence.

I've determined the presentence investigation report is accurate and order the findings of the report to be incorporated in the following sentence:

Pursuant to the Sentencing Reform Act of 1984 and all amendments, it is the judgment of the Court that Ms. Wallace is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of credit for time served. I have

fully -- I've determined this sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing. In so stating, I am -- I've considered all the 3553(a) factors.

I do not impose a fine.

I do impose the $25 special monetary assessment.

Upon release from imprisonment, which will be immediate, she will be placed on supervised release for a term of one year. And I'm going to, as I noted, wave mandatory drug testing because I find she's low risk. And the only -- and I'm imposing the mandatory terms of supervision.

The total sentence is credit for time served, one year on supervised release, and a $25 special monetary assessment.

Does the government have objections to this Court's findings of fact, conclusions of law related to this sentence, or the manner in which it was imposed?

MR. WELCH: No, Your Honor.

THE COURT: Defense?

MR. SMITH: Judge, I have no objections.

I did mention the ankle monitor. That will not be a condition of supervised release?

THE COURT: I didn't impose it, so it could come off now; right?

THE PROBATION OFFICER: That's correct, Your Honor.

And if I can just clarify, are the standard conditions

imposed as well or just the mandatory?

THE COURT: Give me one moment, please.

(Pause in proceedings.)

THE COURT: Any objection to the standard conditions?

I was saying no special conditions and I was waiving the drug treatment.

But the standard conditions of the reporting requirements and so forth, Mr. Smith?

(Pause in proceedings.)

THE COURT: This is you've got to report a change in job; you've got to report --

MR. SMITH: No objection.

THE COURT: So I'm going to impose mandatory standard.

MR. SMITH: That's what I considered mandatory.

Yeah, no objection.

THE COURT: I have to say I opened the report to -- as well because I was doing the same thing, Mr. Smith. So that's why I had to -- there was a pregnant pause. I had to open the presentence investigation report --

MR. SMITH: All right.

THE COURT: -- because I had to verify what was identified as mandatory versus standard.

All right. Anything additional?

MR. SMITH: No, Judge.

THE COURT: All right. Does the government have a

motion regarding Count One?

MR. WELCH: Yes, Your Honor. We move to dismiss pursuant to the plea agreement.

THE COURT: Count One is hereby dismissed.

Court is in recess.

Good luck to you, Ms. Wallace.

THE DEFENDANT: Thank you, sir.

(Proceedings concluded at 11:32 AM on Thursday, June 11, 2026.)

* * * * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Any redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy is noted within the transcript.

/s/ Megan A. Hague 6/17/2026

Megan A. Hague, RPR, FCRR, CSR Date
Official U.S. Court Reporter